IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MONTGOMERY TOWNSHIP, MONTGOMERY TOWNSHIP POLICE DEPARTMENT, EAST NORRITON TOWNSHIP, and, EAST NORRITON TOWNSHIP POLICE DEPARTMENT,<br><br>        Plaintiffs,<br><br>  v.<br><br>FORD MOTOR COMPANY,<br><br>        Defendant. | Civil Action No. _____ |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1441, defendant Ford Motor Company ("Ford") hereby removes the state court action entitled *Montgomery Township v. Ford Motor Co.,* Case No. 0212125, filed in the Court of Common Pleas of Montgomery County, Pennsylvania, on May 31, 2002. Ford was served with the complaint in this action on July 3, 2002. Per 28 U.S.C. § 1446(a), a copy of all process, pleadings and orders served upon Ford is filed with this notice at Tab A. In support of removal, Ford states as follows:

## GROUNDS FOR REMOVAL

1. The Court has jurisdiction over this removed action under 28 U.S.C. § 1441 because this action could originally have been filed in this Court under 28 U.S.C. §§ 1331, 1332, and 1367. Federal diversity jurisdiction exists over this case because all parties are diverse and the amount in controversy exceeds $75,000. In addition, federal question jurisdiction exists because the

plaintiffs' state-law claims arise, in whole or in part, from Ford's alleged failure to follow federal safety standards.

## DIVERSITY JURISDICTION

### Complete Diversity

2. This case meets the first of two requirements for the exercise of federal diversity jurisdiction: that the parties be completely diverse from each other. *See Strawbridge v. Curtiss*, 7 U.S. 267 (1806).

3. The plaintiffs in this action – Montgomery Township, Pennsylvania, and its police department, and East Norriton Township, New Jersey, and its police department – are, for diversity purposes, residents of Pennsylvania. *See, e.g., Moor v. County of Alameda*, 411 U.S. 693, 717-18 (1973) (political subdivisions of a state are citizens of that state for diversity jurisdiction purposes). The defendant, Ford, is a Delaware corporation with its principal place of business in Dearborn, Michigan. The parties in this case, then, are completely diverse.

### Amount in Controversy

4. This case also meets the second requirement for the exercise of federal diversity jurisdiction: that at least $75,000 be in controversy between the parties. *See* 28 U.S.C. § 1332(a); *Angus v. Shiley, Inc.*, 989 F.2d 142, 146 (3d. Cir. 1993) (in evaluating a complaint containing an open-ended claim for damages (such as the instant one), a court should appraise the amount in controversy according to a "reasonable reading of the value of the rights being litigated" and should retain federal jurisdiction if a reasonable jury could value the plaintiff's claims at over the jurisdictional amount). The value of the monetary relief each named plaintiff seeks here exceeds $75,000.

5. The plaintiffs assert claims for strict liability, breach of warranty, and negligence on behalf of themselves and "[a]ll political subdivisions and police departments located in Montgomery County, Pennsylvania, which own or lease Ford Crown Victoria vehicles for use in police departments." Class Action Complaint at ¶ 21 ("Compl.").

6. The plaintiffs allege that Ford's Crown Victoria Police Interceptor vehicles "are products which were manufactured, produced, marketed, sold and/or leased by Defendant Ford Motor Company in a defective condition, unreasonably dangerous to Plaintiffs' employees and users, and said products did, in fact, reach Plaintiffs without substantial change and in the condition in which they were intended to be used." Compl. at ¶ 12.

7. The plaintiffs also allege that Ford "impliedly warranted that said Ford Crown Victoria automobiles were of good and merchantable quality and fit for their intended use." *Id.* at ¶ 16. Ford, the plaintiffs allege, at all relevant times "knew that the vehicles being marketed, sold and/or leased to Plaintiffs were to be used by Plaintiff Police Departments." *Id.* at ¶ 17. The Plaintiffs contend that these implied warranties "were breached by the design of the vehicles and/or the location and design of the gas tanks, which are unsuitable for police work because of the risk of getting rammed from behind when stopped on road shoulders to direct traffic or help motorists." *Id.* at ¶ 18.

8. The plaintiffs further allege that Ford "was negligent, reckless and careless in manufacturing, producing, marketing, selling and/or leasing the aforesaid Ford Crown Victoria vehicles to political subdivisions and/or police departments[.]" *Id.* at ¶ 20.

9. The plaintiffs further allege that the "risk of harm police officers face necessitates relief including payment for these safety modifications by Ford." *Id.* at ¶ 21.

10. Based on these allegations, the plaintiffs demand that Ford pay them "[d]amages representing the cost of repair or modification of the gas tanks of all Ford Crown Victoria police cruisers." *Id.* at ¶ 27.

11. The plaintiffs also seek a "[r]ecall of all Crown Victoria automobiles used by police departments and political subdivisions in Montgomery County, with appropriate payment for the value of said vehicles, or replacement of said vehicles." *Id.* at ¶ 27.

12. In addition, the plaintiffs ask that the Court "[r]equir[e] Defendant to add protective shields and/or install new tanks with a bladder or protective inner liner" and to make "[s]uch other modifications to the gas tanks as are necessary to protect the safety of police officers and other persons using said vehicles." *Id.* at ¶ 27.

13. Finally, the plaintiffs seek "[a]ppropriate pre-judgment interest, attorneys' fees, costs of suit, delay damages and whatever other remedy this Court deems appropriate." *Id.* at ¶ 27.

14. The plaintiffs' requests for relief place over $75,000 in controversy with respect to each named plaintiff.

15. First, as noted above, the plaintiffs seek "appropriate payment for the value of said [Crown Victoria] vehicles, or replacement of said vehicles." *Id.* at ¶ 27. Upon information and belief, the replacement value of only those Crown Victoria vehicles that each named plaintiff has purchased just within *the last three years* exceeds $75,000. Since 1999, East Norriton Township and Montgomery Township have each purchased at least eight Crown Victoria Police Interceptors. *See* Declaration of Rodney Benjamin (attached at Tab B). The dealer price for the 2001 model of the Crown Victoria Police Interceptor vehicle is $20,808. *See* 2001 Police Interceptor Price List (attached at Tab C). Hence, the "replacement" value of only those Crown

4

Victoria Police Interceptor vehicles that the named plaintiffs have purchased in the last three years alone far exceeds $75,000. On this score alone, this case meets the amount-in-controversy requirement for diversity jurisdiction.

16. This case, however, satisfies the amount-in-controversy requirement for diversity jurisdiction in another respect. In addition to requesting payment for the replacement value of the Crown Victoria Police Interceptor vehicles at issue here, the plaintiffs seek "[d]amages representing the cost of repair or modification of the gas tanks of all Ford Crown Victoria police cruisers" that the plaintiffs have purchased. Compl. at ¶ 27.

17. At least one other municipality with Crown Victoria Police Interceptor vehicles in its law enforcement fleet, the city of Chandler, Arizona, has chosen to modify its vehicles by installing a protective bladder in its fuel tank in this manner. The installation of bladders on 130 vehicles owned by the city of Chandler "will cost an estimated $225,000" – or over $1700 per vehicle. *See* "Chandler Will Spend $225,000 To Install Bladders," The Arizona Republic, June 28, 2002 (http://www.arizonarebulbic.com/special20/articles/0628chandvic28-ON.html).

18. Assuming, then, that the repairs or modifications the plaintiffs seek here will cost $1,700 per Crown Victoria Police Interceptor vehicle, East Norriton Township and Montgomery Township are each asking for at least $13,600 in compensatory damages for the costs of repairing their Crown Victoria vehicles.

19. In addition to the costs of replacing, repairing, and modifying their Crown Victoria vehicles, the plaintiffs have requested "whatever other remedy this Court deems appropriate." Compl. at ¶ 27. Given the plaintiffs' allegations in this case, they presumably will contend that "appropriate" relief here includes punitive damages, which juries routinely award in significant

amounts in product-liability cases where a "safety defect" is alleged.  *See, e.g., Bemer Aviation, Inc. v. Hughes Helicopter, Inc.*, 621 F.Supp. 290, 300-01 (E.D. Pa. 1985) (approving punitive damage award of $1 million when compensatory damages were only $11,500 in product liability action); *Friedman v. F.E. Myers Co.*, 710 F.Supp. 118, 122-25 (E.D. Pa. 1989) (surveying Pennsylvania law concerning proper ratio of punitive damages to actual damages and finding punitive damages award of $30,000 "appropriate" under Pennsylvania law where compensatory damages for negligence and strict liability in product defect action were $1,000).

20. Considering the compensatory damages the plaintiffs seek for the cost of repairing and/or modifying their Crown Victoria vehicles, relevant Pennsylvania remedies law, and the dramatic allegations that the plaintiffs level at Ford in this case – i.e., that Ford knows of a dangerous defect in its Crown Victoria Police Interceptor vehicles yet has done nothing to eliminate that defect while continuing to market those vehicles to potential purchasers as safe and fit for their intended purpose, *see, e.g.,* Compl. at ¶ 10, 16 – it is reasonable to assume that if the plaintiffs could prove their case, "appropriate" relief would include a punitive damages award of at least $45,000 per named plaintiff.

21. Finally, the plaintiffs seek attorneys' fees.  Compl. at ¶ 27.  The amount of that prospective fee award also must be included in the determination of the amount in controversy. *See Missouri State Life Ins. Co. v. Jones,* 290 U.S. 199, 202 (1933); *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3rd Cir. 1997); 28 U.S.C. § 1332(a) (excluding only interest and costs from amount in controversy).

6

22.  In a suit of this nature and magnitude, it is reasonable to assume that those fees will amount to at least $20,000 per named plaintiff.  *See, e.g., Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d. Cir. 1997).

23. Taken together, then, the plaintiffs' request for compensatory damages, punitive damages, and attorneys' fees exceed $75,000 per named plaintiff and give this Court diversity jurisdiction.

## FEDERAL QUESTION JURISDICTION

24. This Court also has jurisdiction over this case because the plaintiffs' claims, which turn on the alleged existence of a safety-related defect, necessarily implicate the National Traffic and Motor Vehicle Safety Act, 49 U.S.C § 30118, *et seq*.

25.  The complaint seeks a recall of the Crown Victoria vehicles at issue.  *See* Compl. at ¶ 27. Under federal law, an automobile manufacturer must recall any vehicle that it determines has a safety-related defect.  *See, e.g.,* 49 U.S.C. § 30118(c) (motor vehicle manufacturer must notify the National Highway Traffic Safety Administration ("NHTSA") if manufacturer determines vehicle or equipment has safety-related defect); 49 U.S.C. §§ 30119-120 (recall procedures for safety-related defects); 29 C.F.R. § 577.5 (requirements for notification of motor vehicle owners where manufacturer determines there is safety-related defect).

26. ***There is no state law duty for a manufacturer to recall vehicles.***  Rather, the only duty to recall arises under the National Traffic And Motor Vehicle Safety Act ("Safety Act"), 49 U.S.C. § 30118 *et seq.  See Gregory v. Cincinnati, Inc*., 538 N.W.2d 325, 334 (Mich. 1995) ("policymakers have explicitly delegated such authority [to order recalls] to administrative agencies" (citing the Safety Act)); *see also Ford Motor Co. v. Magill*, 698 So. 2d 1244, 1245

(Fla. Dist. Ct. App. 1997) ("NHTSA has accorded present owners of the vehicles a remedy to secure a correction of the problem to their vehicle, and Florida courts should defer to NHTSA"); *Patton v. Hutchinson Wil-Rich Mfg. Co.*, 861 P.2d 1299, 1315 (Kan. 1993) ("We reason that product recalls are properly the business of administrative agencies as suggested by the federal statutes that expressly delegate recall authority" (citing Safety Act)).[1]

27. Thus, in order to obtain the relief they request, the plaintiffs would have to demonstrate that Ford violated the Safety Act by selling vehicles containing a safety-related defect.

28. As a matter of law, because the predicate issue underlying the plaintiffs' state law claims would involve substantial federal questions, the plaintiffs' claims arise under federal law. *See Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9 (1983) ("We have often held that a case 'arose under' federal law where the vindication of a right under state law necessarily turned on some construction of federal law"); *Ayres v. Gen. Motors Corp.*, 234 F.3d 514, 518-20 (11th Cir. 2000) (federal question jurisdiction existed where plaintiff alleged that a duty under the Safety Act gave rise to another cause of action); *see also Namovicz v Cooper Tire & Rubber Co.*, No. WMN-00-3676, 2001 WL 327886, at *2 (D. Md. Feb. 26, 2001) (despite plaintiff's assertion that his claims were premised on state law, NHTSA's exclusive authority over safety-related recalls rendered plaintiffs' claims regarding allegedly defective tires "necessarily federal in character") (Attached at Tab D).

---

[1] *See also Syrie v. Knoll Int'l*, 748 F.2d 304, 311 (5th Cir. 1984) (finding no duty under Texas law for a manufacturer to recall a product); *Nat'l Women's Health Network, Inc. v. A.H. Robins Co.*, 545 F. Supp. 1177, 1180 (D. Mass. 1982) ("No court has ever ordered a notification and recall campaign on the basis of state law"); *Smith v. Firestone Tire & Rubber Co.*, 755 F.2d 129, 135 (8th Cir. 1985) (no duty to recall independent of Safety Act); *E. R. Squibb & Sons, Inc. v. Stickney*, 274 So. 2d 898, 907-08 (Fla. Dist. Ct. App. 1973) (manufacturer had no state law duty to recall product or advise that its use be discontinued despite instances of product failure).

29. In short, insofar as each of the plaintiffs' claims necessarily arise under federal law, this Court has jurisdiction over all of their claims under 28 U.S.C. § 1331 and § 1367.

30. As defendant is filing this Notice of Removal within 30 days after the July 3, 2002, service date of the complaint on Ford, the Notice of Removal is timely filed under 28 U.S.C. § 1446(b).

31. Concurrent with the filing of this Notice of Removal, defendant is giving written notice of the Notice of Removal to the Superior Court of New Jersey, Middlesex County.

Date: July 15, 2002

Respectfully submitted:

_____
C. Scott Toomey
Robert Tolland

CAMPBELL, CAMPBELL EDWARDS &
 CONROY, LLP
901 Route 168, Suite 201
Turnersville, New Jersey  08012

John H. Beisner
Brian C. Anderson
Teresa E. Dawson
O'MELVENY & MYERS LLP
555 13th Street, NW
Suite 500 West
Washington, D.C.  20004
(202) 383-5300

ATTORNEYS FOR DEFENDANT
FORD MOTOR COMPANY

DC1:519880.2