UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MONTGOMERY TOWNSHIP, et al.,<br><br>　　　　　　　Plaintiffs,<br>v.<br>FORD MOTOR COMPANY,<br><br>　　　　　　　Defendant. | Civil Action No. 02-CV-4710 |

**DEFENDANT'S MOTION TO STAY**

　　Defendant Ford Motor Company ("Ford") hereby moves to stay all proceedings in this case until the Judicial Panel on Multidistrict Litigation ("MDL Panel") resolves pending motions for transfer and consolidation pertaining to this case. At present, eight putative class actions involving the same issues presented by the complaint herein have been filed in federal and state courts across the country. A stay of the proceedings in this case (just like the stays being sought in all other putative class actions that are subject to the MDL proceeding) would accommodate pending efforts before the MDL Panel to achieve an orderly transfer of all pending federal actions on this subject to one federal court.

　　As is detailed in the accompanying memorandum in support of this motion, this Court has inherent the power to stay proceedings. In the circumstances presented here, it is common practice to issue stay orders pending the MDL Panel's resolution of a motion to transfer and coordinate cases. A stay would conserve judicial resources, reduce the burden on the parties, prevent duplicative litigation, and avoid the potential for inconsistent rulings.

　　　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　CAMPBELL, CAMPBELL, EDWARDS & CONROY, PC


　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　C. Scott Toomey
　　　　　　　　　　　　　　　　　　　　Attorney for Defendant
　　　　　　　　　　　　　　　　　　　　Ford Motor Company

　　　　　　　　　　　　　　　　　　　　Three Glenhardie Corporate Center
　　　　　　　　　　　　　　　　　　　　1265 Drummers Lane, Suite 200
　　　　　　　　　　　　　　　　　　　　Wayne, PA 19087
　　　　　　　　　　　　　　　　　　　　(610) 964-1900

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MONTGOMERY TOWNSHIP, et al.,<br><br>　　　　　　　　Plaintiffs,<br>v.<br>FORD MOTOR COMPANY,<br><br>　　　　　　　　Defendant. | Civil Action No. 02-CV-4710 |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT'S MOTION FOR STAY**

　　This case is one of eight putative class action lawsuits filed against Ford Motor Company ("Ford") alleging defects in the fuel tank systems of 1992-2002 Crown Victoria vehicles. In an effort to bring order to the potential litigation chaos these overlapping lawsuits threaten to create, Ford has been removing these cases to federal court and has filed a motion with the Judicial Panel on Multidistrict Litigation ("MDL Panel") seeking to transfer all Crown Victoria Police Interceptor cases to a single U.S. District Court for consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. This is one of the cases included in Ford's MDL transfer/consolidation motion. While the MDL Panel is considering Ford's motion, this Court should stay this case in order to conserve judicial resources and avoid the prospect of rulings that may conflict with those of other courts.

**Background**

　　The National Traffic and Motor Vehicle Safety Act, 49 U.S.C. §§ 30101-30170 ("Safety Act") confers upon the National Highway Traffic Safety Administration ("NHTSA") authority to "prescribe motor safety vehicle standards" for all vehicles sold in the United States. 49 U.S.C. § 30111(a). One of those standards (FMVSS301) specifies requirements concerning the ability of

2

motor vehicle fuel systems to withstand crashes without spilling fuel and starting fires. The standard applicable to the Crown Victoria vehicles at issue here specifies that the vehicle be able to withstand a rear-end collision at 30 miles per hour under certain specified test conditions without leaking more than a specified amount of fuel. 49 C.F.R. § 571.301(S6.2). It is undisputed that all 1992-2002 Crown Victoria vehicles meet (indeed they exceed) this federal safety standard.

The viewpoint underlying this lawsuit is that NHTSA's fuel system standards governing these vehicles should have been higher—that automobile manufacturers should have been required to design these vehicles to withstand rear-end collisions at upwards of 70 mph without leaking substantial quantities of fuel. This topic has been a matter of much discussion and debate among NHTSA, automobile manufacturers, and so-called consumer advocates for several years. As part of that debate, some critics have focused their attention on police cars—most notably Ford Crown Victoria Police Interceptors, which dominate the police car market—arguing that police cars should be designed to meet higher fuel system integrity standards given the special manner in which they are used. In December 2001, NHTSA opened an investigation into this very question. That investigation is still underway.

Beginning in May 2002, with NHTSA's investigation still pending, purported class action lawsuits relating to the fuel systems in Crown Victoria Police Interceptors began to be filed in courts all over the country. At the moment, there are one or more purported class actions (or similar actions) pending against Ford in Alabama, Arkansas, Florida, New Jersey, Pennsylvania, and Texas. These lawsuits are largely duplicative of each other inasmuch as they basically assert the same sorts of legal claims on behalf of the same purported class members. For example, some are brought on behalf of proposed nationwide classes of entities that own

3

Register to Remove Trial Watermark!!

Crown Victoria vehicles, while others are brought on behalf of various subsets of that group. At their core, all of these lawsuits essentially contend that the Crown Victoria vehicles at issue have a "safety-related defect" such that Ford should be required to recall and retrofit the vehicles (or provide the monetary equivalent thereof). Further, they all contend that the claims asserted by the owners of these vehicles are well-suited to *en masse* litigation via the class action device. Coordination of these cases is therefore necessary to avoid the inefficiencies and other difficulties posed by litigating multiple overlapping putative class actions simultaneously in different courts.

In order to avoid subjecting both the judiciary and itself to a growing litigation morass, Ford filed a motion with the MDL Panel on July 10, 2002 to transfer all proposed Crown Victoria fuel system class actions pending in federal court to a single U.S. District Court for consolidated pretrial proceedings. The MDL Panel set a briefing schedule on that motion, the motion is currently being briefed, and it will likely be heard and decided in September. Having obtained consolidated treatment of overlapping proposed class actions on several previous occasions, *see, e.g., In re Bridgestone/Firestone, Inc. Tire Prod. Liab. Litig.,* MDL No. 1373; *In re Ford Motor Co. Vehicle Paint Litig.,* MDL No. 1063; *In re Ford Motor Co. Ignition Switch Litig.,* MDL No. 1112; *In re Ford Motor Co. Bronco II Litig.,* MDL No. 991, Ford anticipates that its MDL transfer/consolidation motion will be granted.

### Argument

While the MDL Panel is considering Ford's motion to transfer and consolidate the duplicative lawsuits filed against it (including this one), this Court should stay all proceedings in this case. A stay would ensure consistent treatment of the many pending lawsuits and would conserve judicial resources.

Register eDocPrinter PDF Pro Online Now!!

4

Register to Remove Trial Watermark!!

The power to stay is well established. It is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936); 7B C. Wright, A. Miller & M. Kane, FEDERAL PRACTICE AND PROCEDURE § 1792, at 293 (2d ed. 1986) ("when similar actions, either class or individual, are proceeding before several courts, one or more of the tribunals may stay the proceeding before it pending the outcome of the other action."); MANUAL FOR COMPLEX LITIGATION § 31.14 (3d ed. 1995) ("in appropriate cases, a judge may order an action stayed pending resolution of a related case in a federal court").

A stay is particularly appropriate when a litigant has initiated the MDL process. Cases asserting redundant claims may be transferred by the MDL Panel to a single district for coordinated pretrial proceedings. 28 U.S.C. § 1407(a). Coordination furthers judicial economy and eliminates the potential for conflicting pretrial rulings. *See, e.g., In re New York City Mun. Sec. Litig.*, 572 F.2d 49, 51-52 (2d Cir. 1978); *Good v. Prudential Ins. Co. of Am.*, 5 F. Supp.2d 804, 809 (N.D. Cal. 1998); *In re Air Crash Disaster off Long Island, N.Y.*, 965 F. Supp. 5, 7 (S.D.N.Y. 1997). These benefits would be lost if individual cases proceed pending the MDL Panel's transfer of the cases to a single judge. Allowing those individual cases to proceed risks saddling that judge with inconsistent rulings. Indeed, "a majority of courts have concluded that it is often appropriate to stay preliminary pretrial proceedings while a motion to transfer and consolidate is pending with the MDL Panel because of the judicial resources that are conserved." *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1362 (C.D. Cal. 1997).[1]

---

[1] *See also Aikins v. Microsoft Corp.*, Civ. A. No. 00-0242, 2000 WL 310391 (E.D. La. Mar. 24, 2000) (granting stay pending ruling by MDL panel) (attached at Tab 1); *Aetna U.S. Healthcare, Inc. v. Hoechst*

Register eDocPrinter PDF Pro Online Now!!

5

Register to Remove Trial Watermark!!

Where a motion to transfer has been filed with the MDL Panel, district courts generally review three factors to decide whether to stay pending proceedings until the Panel can rule. These factors are: (1) hardship to the moving party if a stay is not granted; (2) potential prejudice to the non-moving party; and (3) the judicial resources that can be saved by avoiding duplicative litigation if the cases are consolidated. *See, e.g., Rivers*, 980 F. Supp. at 1360. Even where a non-moving party claims that a stay will cause delay and prejudice, "there are considerations of judicial economy and hardship to defendants that are compelling enough to warrant such a delay." *Arthur Magna*, 1991 WL 13725, at *1. Without question, a stay is warranted here.

There are now five putative class actions involving this same issue already pending in federal district court, and more are on the way. Absent a stay, it is likely that the plaintiffs in each case will seek to move their case along on its own track as quickly as possible, notwithstanding the resultant burden on Ford, duplicative judicial effort, and risk of inconsistent outcomes.

The litigation scheduling activities contemplated by the Court's August 1, 2002 Notice, which includes an August 21, 2002 initial pretrial conference, illustrates that concern. The Court's order and upcoming scheduling conference contemplates that the plaintiffs and Ford will develop a case-specific schedule for exchanging initial disclosures under Fed. R. Civ. P. 26(a)(1), for filing various initial motions, for taking discovery, and for scheduling the debate over the propriety *vel non* of class certification. Yet each of the activities will be required in

---

*Akiengesellschaft*, 48 F. Supp.2d 37, 43 (D.D.C. 1999) (same); *American Seafood, Inc. v. Magnolia Processing, Inc.*, Civ. A. Nos. 92-1030, 92-1086, 1992 WL 102762, at *2 (E.D. Pa. May 7, 1992) ("This court has determined that a stay pending the disposition of the JPML motion is appropriate under the circumstances.") (attached at Tab 2); *Arthur Magna, Inc. v. Del-Val Fin. Corp.*, Civ. A. No. 90-4378, 1991 WL 13725 (D.N.J. Feb. 1, 1991) (granting stay because it fosters the purpose of the MDL statute to coordinate related litigation) (attached at Tab 3); *Portnoy v. Zenith Labs., Inc.*, Civ. A. No. 86-3512, 1987 WL 10236, at *1 (D.D.C. Apr. 21, 1987) (same) (attached at Tab 4).

Register eDocPrinter PDF Pro Online Now!!

Register to Remove Trial Watermark!!

each action that is included within Ford's MDL transfer/motion. It would defeat the efficiency and uniformity objectives of the MDL procedure itself for these activities to begin now on separate tracks in each court in which a Crown Victoria case (temporarily) resides.

Plaintiffs' apparent forthcoming remand motion[2] illustrates that concern. Given that all eight Crown Victoria class actions of which Ford is aware were originally filed in state court and that Ford has been removing, and will continue to remove, those cases, it is conceivable that the plaintiffs in multiple actions will move to remand—contesting the basis for federal jurisdiction. Since Ford's bases for removing those cases is similar in each case, Ford would be obliged to brief the jurisdictional issues several times in several different courts. What happens if one court decides that plaintiffs' allegations of a safety-related defect and request for a court-ordered recall (or comparable relief) creates federal question jurisdiction and another court decides that it does not? Two different district courts will have reached different answers to the same legal question. This kind of inconsistency of result (not to mention duplicative litigation activity) is precisely what the MDL consolidation procedure is designed to avoid. Yet the objectives of the MDL process will be defeated if Ford is required to debate the existence of federal jurisdiction separately in many different courts while its MDL motion remains pending. Accordingly, this Court should follow the lead of the many other courts that have stayed consideration of remand motions while MDL transfer/consolidation motions are pending. *See Washington v. Bayer Corp.*, No. Civ. A. 02-0698, 2002 WL 1308590 (E.D. La. June 12, 2002) (deferring ruling on remand motion pending a ruling by the MDL Panel); *Medical Society of the State of New York v. Connecticut General Corp.*, 187 F.Supp.2d 89, 92 (S.D. N.Y. 2001) (finding "there are

---

[2] Although Ford has not yet seen plaintiffs' remand motion, plaintiffs' Initial Pretrial Conference Status Report (dated Aug. 7, 2002) indicates that one is "pending."

Register eDocPrinter PDF Pro Online Now!!

significant economies in having a single court decide a jurisdictional question which has arisen and presumably will continue to arise in cases around the nation").

A stay of proceedings (including the initial conference and any decision on their remand motion) will not prejudice Plaintiff's legitimate interests. Once this case is consolidated with the other Crown Victoria cases, its remand motion can and will be decided by the transferee court in conjunction with any remand motions that other plaintiffs may file. As the MDL Panel recently observed, "[s]hould the transferee judge deem remand of any claims or actions appropriate, procedures are available whereby this may be accomplished with a minimum of delay." *See In re Bridgestone/Firestone*, 151 F. Supp. 2d 1381, 1382 (J.P.M.L. 2001).

Given that the vehicles at issue in this lawsuit (1992-2002 Crown Victoria Police Interceptors) have been on the road for over ten years, the relatively brief delay associated with allowing the MDL motion process to run its course cannot be viewed as a serious prejudice to any legitimate interests plaintiffs might have. Any strategic desire of plaintiffs to get out in front of the litigants in the other Crown Victoria class actions, or to deprive Ford of the time necessary to contest this lawsuit in the normal course, simply is not a legitimate interest to which this Court should give deference. *See, e.g., Rivers,* 980 F. Supp. at 1362 (discounting any prejudice to the non-moving party in the time between issuing the stay and the MDL Panel's consideration of the motion).

Staying the action would also benefit the judicial system and this Court. If this case is ultimately transferred to the MDL proceeding, then "this Court will have needlessly expended its energies familiarizing itself with the intricacies of a case that would be heard by another judge." *Rivers*, 980 F. Supp. at 1360. Additionally, "any efforts on behalf of this Court concerning case

Register to Remove Trial Watermark!!

management will most likely have to be replicated by the judge that is assigned to handle the consolidated litigation." *Id.* at 1360-61.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that this Court stay all further proceedings pending the MDL Panel's ruling on Defendants' Section 1407 transfer/consolidation motion.

Dated:  August 12, 2002                                    Respectfully submitted,


By:_____
    C. Scott Toomey
    CAMPBELL, CAMPBELL, EDWARDS & CONROY, PC


ATTORNEYS FOR DEFENDANT FORD
MOTOR COMPANY

Three Glenhardie Corporate Center
1265 Drummers Lane, Suite 200
Wayne, PA 19087
(610) 964-1900

Of Counsel
John H. Beisner
Brian C. Anderson
Teresa E. Dawson
Kelly J. Riordan
Garrett W. Wotkyns
O'Melveny & Myers LLP
555 13th Street, N.W., Suite 500 West
Washington, D.C.  20004-1109
(202) 383-5300 – Telephone
(202) 383-5414 – Fax

DC1:522513.1

Register eDocPrinter PDF Pro Online Now!!